**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VERVE COMMUNICATIONS PVT. LTD., : | Civil No. 11-1280 (FLW) |
| Plaintiff, : |  |
| v. : | OPINION |
| SOFTWARE INTERNATIONAL, INC., : |  |
| Defendant. : |  |

WOLFSON, United States District Judge:

Plaintiff Verve Communications Pvt. Ltd. ("Verve") brought an action in the Chancery Division, Superior Court of New Jersey, Somerset County, to confirm an arbitration award against Defendant Software International, Inc.'s ("SII's"). SII removed the case to this Court and, by way of cross-motion, seeks to have that award vacated. Having reviewed the parties' submissions, the Court now denies SII's cross-motion to vacate and grants Verve's motion to confirm the arbitral award.

I.   BACKGROUND AND PROCEDURAL HISTORY

The following facts are undisputed for purposes of this motion. On April 1, 2009, Verve, a corporation organized under the laws of India, and located in Pune, India, entered into a Client Vendor Service Contract ("Agreement") with SII, a corporation with its principal place of business in New Jersey. The Agreement includes an arbitration clause, which provides:

> All disputes, controversies or claims between the Parties hereto arising out of or relating to this Agreement (including, but not limited to, disputes as to the validity, interpretation, performance, breach, or with respect to damages upon termination of this Agreement) shall first be resolved . . . through binding arbitration arbitration [sic] entirely on the papers, with no live witnesses or appearances by any party, in accordance with the then prevailing Rules of Commercial Arbitration of the American Arbitration Association and judgment on the awards granted by the arbitrator may be entered in any court having competent jurisdiction thereon [sic]

Notice of Removal, Ex. A.  By virtue of this arbitration clause, the parties agreed to a hearing on the papers "with no live witnesses or appearance by any party ...." Id.

After the parties were unable to settle a dispute for unpaid services, Verve filed a demand for arbitration on April 13, 2010.[1]  The parties jointly appointed John R. Holsinger, Esq. ("Mr. Holsinger" or "the arbitrator"), as arbitrator.  The American Arbitration Association ("AAA") rules ("AAA Rules"), referenced in the aforesaid arbitration clause, provide that "[w]here parties have agreed in writing to arbitrate disputes under these [Rules], the arbitration shall take place in accordance with these Rules . . . subject to whatever modifications the parties may adopt in writing."  Def. Opp. Br., Exh. E ("AAA Rules"), Art. 1(a).  In addition, the AAA Rules further provide that "the tribunal may conduct the arbitration in whatever manner it considers appropriate, provided that the parties are treated with equality and that each party

---

[1] The parties recite additional facts in their briefs related to their dispute, however, these facts bear no relevance to the Court's decision on whether the arbitral award should be vacated or confirmed.  Accordingly, I omit them from my discussion.

has the right to be heard and is given a fair opportunity to present its case." Id. at Art. 16(1).

The AAA's ICDR Guidelines further clarify that an arbitrator "shall manage the exchange of information among the parties in advance of the hearings with a view to maintaining efficiency and economy." Def. Opp. Br., Exh. F, ICDR Guidelines for Arbitrators Concerning Exchanges of Information ("ICDR Guidelines"), at ¶ 1a. Further, the guidelines direct the tribunal to "endeavor to avoid unnecessary delay and expense while at the same time balancing the goals of avoiding surprise, promoting equality of treatment, and safeguarding each party's opportunity to present its claims and defenses fairly." Id. Under these guidelines, the tribunal "retains final authority to apply the above standard." Id. at ¶ 1b.

In its Statement of Claim, Verve asserted several claims against SII: breach of contract, misrepresentation and fraud, negligent misrepresentation, breach of the covenant of good faith and fair dealing, unjust enrichment, and common law fraud. SII responded to Verve's Statement of Claim on May 12, 2010, answering the claim and filing its own Counterclaim for breach of contract, misrepresentation and fraud, negligent misrepresentation, breach of the covenant of good faith and fair dealing, unjust enrichment, common law fraud, and unfair and deceptive trade practices.

The arbitrator conducted a telephonic scheduling conference with the parties on July 26, 2010, and issued an order the following day directing that the parties engage in discovery from August 16, 2010 through September 15, 2010. Def. Opp. Br., Exh. G, Scheduling and Procedure Order No. 1 at ¶ 10-11. That Order also indicated that

any disputes regarding the document exchange "that may possibly affect the schedule in this order shall be presented to the arbitrator immediately . . . so the issue can be resolved so as not to delay this proceeding." Id. at ¶ 13. According to the Order, the parties' initial submissions were due on October 7, 2010, and their reply submissions due by October 21, 2010. Id. at ¶¶ 15-16. After reviewing those submissions, the arbitrator would then "either close the hearing or request clarification or elaboration of any matter needing it." Id. at ¶ 17.

On October 5, 2010, the arbitrator held a second telephonic scheduling conference with the parties, including new counsel that SII had retained—Susheela Verma, Esq. See Def. Opp. Br., Exh. H, Scheduling and Procedure Order No. 2. This Order extended the discovery period, ordering SII to respond to Verve's discovery requests by November 4, 2010. Id. at ¶ 1. The Order, further, reiterated the dictate that any disputes be presented to the arbitrator "immediately . . . so as not to delay the proceeding." Id. at ¶ 3. The submissions deadlines were enlarged such that initial submissions were due on November 29, 2010, and reply submissions due on December 13, 2010. Id. at ¶¶ 4, 7. Importantly, the Order provided that "[t]here shall be no extensions of the schedule in this order without good cause." Id. at ¶ 7.

On the date upon which the reply submissions were due, December 13, 2010, SII's counsel submitted a letter, via email, requesting sixty (60) additional days to complete discovery. Def. Opp. Br., Exh. J, Verma Letter dated Dec. 13, 2010, ("Verma Letter") at 1. Specifically, SII sought access to a computer server owned by a company named "Devix." Id. The letter explained that the server was inaccessible because

4

Devix was in bankruptcy, "therefore possibly requiring court approval for requesting information and documentation from it." Id.  According to SII, the data on the server would prove that Verve performed defective and/or "deficient computer work." Id. Further, the letter argues, the "intense technical nature of this matter" mandates that SII obtain access to the server's "substantial amount of evidence," and that without that evidence, "SII [would be] unable to adequately respond to Verve's Initial Submission . . ., present an adequate defense or prosecute its Counterclaim." Id. This, in SII's view, amounted to good cause shown under the second scheduling order. Id.

As an alternate basis justifying its request for additional time, the letter points to several AAA Rules SII found applicable.  First, the letter cites AAA Rule R-28, which (the letter argues) allows for the postponement of a hearing or extension of any set period of time for good cause shown.  Second, the letter quotes AAA Rule R-31(a), as stating that "[t]he parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute." Id. at 2.  Third, the letter argued that neither the AAA Rules nor the arbitrator's scheduling orders provide a mechanism by which SII could have subpoenaed Devix for the data.[2] Id. Finally, the letter noted that SII's counsel had previously alerted Verve's counsel of its problem in obtaining access to Devix's servers.

---

[2] The parties submitted further communications to the arbitrator regarding SII's request for additional time.  See e.g., Def. Opp. Br., Exh. K. These communications, however, do not bear on my decision and are, therefore, omitted from my decision here.

Mr. Holsinger, the arbitrator, denied SII's request for additional time to complete discovery and delivered his award, on January 11, 2011, in favor of Verve. In his ruling, Mr. Holsinger concluded that SII did not show good cause why the discovery period should be expanded and the hearing postponed. In his view, SII failed to provide sufficient detail to support a finding of good cause:

> There is no detail about what type of information is on the computer server to which [SII] does not have access. There is no indication what efforts, if any, [SII] made to obtain the information on the server. There is no reason given for why this issue could not have been raised to the arbitrator before December 13, 2010. There is no indication of when the issue with the information on the server arose. It appears that [SII] was aware of the issue with the server at least by the time of its November 3, 2010 letter to [Verve's] counsel.

Def. Opp. Br., Exh. L, Award of Arbitrator at ¶ 4.[3]

Moreover, the arbitrator continued, SII failed to otherwise provide any further detail regarding its contention that Verve provided defective services. Id. at ¶ 5. He reasoned that SII could have presented affidavits from current or former SII employees regarding SII's exact complaints about Verve's practices.[4] In the arbitrator's view, that

---

[3] From the context of the arbitrator's discussion, it appears that the November 3, 2010 letter was the means by which SII notified Verve counsel of its difficulty in obtaining access to the Devix servers.

[4] SII has provided the Court with an affidavit by one of its employees who attests that Verve overbilled SII and provided "deficient code" and "unworkable software." Def. Opp. Br., Exh. M, Sabade Afft., ¶¶ 6-8. This affidavit, however, was not submitted to the arbitrator and, therefore, does not bear on the Court's decision whether to confirm or vacate the arbitrator's ruling. See generally Teamsters Local Union No. 115 v. DeSoto, Inc., 725 F.2d 931, 940 (3d Cir. 1984) ("[A] court should not consider additional evidence in deciding whether to enforce an [arbitration] award"). The same holds true for the Certification of Suneel Sawant, SII's President, in which

SII did not provide this sort of information caused him to draw "an adverse inference from [SII's] failure to present it." Id. Mr. Holsinger further noted that SII "ignore[d] the statutory bases for subpoenaing such information," id. at ¶ 6, and neglected to raise the issue during either of the telephonic scheduling conferences or after SII's November 3rd letter to Verve informing Verve that it was experiencing difficulty in obtaining access to Devix's servers. Id.

Turning to the merits, the arbitrator ruled in favor of Verve and awarded it $336,736.00 in damages plus interest at 8% per annum. The arbitrator, further, awarded Verve $6,615.00 for reimbursement of fees and expenses borne by Verve. As for SII's counterclaim, the arbitration denied the counterclaim in its entirety and dismissed it with prejudice.

After the ruling was issued, Verve filed a summary action seeking to confirm the arbitration award in the Chancery Division, Superior Court of New Jersey, Somerset County, on February 7, 2011. That same date, Verve filed a proposed Order to Show Cause why the arbitration award should not be confirmed and judgment entered in Verve's favor. On February 8, 2011, the state court judge entered the Order to Show Cause, setting it for a March 11, 2011 return date. Prior to the return date, on March 2, 2011, SII opposed the Order to Show Cause and moved for leave to file a

---

he sets forth details regarding Devix's downfall and SII's inability to obtain access to Devix's servers. See Def. Opp. Br., Exh. O, Sawant Cert., ¶¶ 1, 8-11. This certification, dated February 28, 2011, was also not presented to the arbitrator and, consequently, does not inform my analysis.

counterclaim against Verve. Thereafter, on March 5, 2011, SII removed the action to this Court.

Once the matter was removed to this Court, Verve filed a motion to confirm the arbitral award on April 8, 2011. In addition to opposing that motion, SII filed a cross-motion to vacate the arbitral award on May 2, 2011. The matter is now ripe for decision.

## II.   DISCUSSION

While the parties' briefs contain lengthy discourses about what occurred during the arbitration proceeding, and about whether state or federal law enforcement mechanisms apply to the arbitral award, I find that the case law unequivocally dictates that the arbitral award be confirmed for the reasons set forth below.

### A.   Standard of Review

Generally, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq, "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Ario v. Underwriting Memb. of Syndicate 53 at Lloyds for 1998 Year of Account, 618 F.3d 277 (3d Cir. 2010) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ., 489 U.S. 468, 474, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). The FAA was "designed to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." Id. at 288. The statute identifies four narrow grounds for vacating an arbitral award: where the award was procured through corruption/fraud, evident partiality on the part of the arbitrator, arbitrator misconduct,

or where the arbitrator exceeded his or her powers or acted arbitrarily.[5] Where a court finds no justifiable grounds for vacating the award, the court will confirm it. Id. at 296. "As a reviewing court, [I] do not act to correct factual or legal errors made by an arbitrator, and [I] will uphold an award even if the arbitrator engaged in improvident, even silly, factfinding, so long as the arbitrator did not act completely irrationally." Id. at 296 (internal citation and quotation marks omitted).

The parties disagree as to whether their dispute—Verve's motion to confirm and SII's cross-motion to vacate—is governed by the FAA, which is the United States' implementing legislation for the Convention on the Recognition of Foreign Arbitral

---

[5] The statutory provision states, in toto:

> [i]n any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Awards ("the New York Convention"), adopted June 10, 1958 , 21 U.S.T. 2517, 330 U.N.T.S. 3, or New Jersey's version of the Uniform Arbitration Act, N.J.S.A. 2A:23B-1 et seq. ("NJ Arbitration Act").  Verve argues that the FAA controls whereas SII contends that the NJ Arbitration Act governs.  As an initial matter, the Court finds SII's argument that the NJ Arbitration Act governs surprising.  SII states in its Notice of Removal that "[t]his matter falls under the New York Convention . . ., as enabled in Chapter 2 of the Federal Arbitration Act ...."  Notice of Removal, ¶ 6.  See also 9 U.S.C. § 205 (granting parties the right to remove, pursuant to the FAA, "matter[s] . . . relating to an arbitration agreement").  Nevertheless, I turn to Third Circuit case law to ascertain which statute governs here.

The Third Circuit recently explained, in Ario, that parties to an arbitration agreement may not "opt out" of the FAA.  Id. at 288.[6]  The only means by which parties may designate that state law enforcement mechanisms will apply, in lieu of the FAA's default rules, is to express a "clear intent' to apply state law . . . standards instead of those of the FAA."  Id. at 293 (citation omitted).   For example, the Third Circuit explained, parties may include language in their agreement to this effect: "any controversy shall be settled by arbitration in accordance with the terms of the [NJ

---

[6]  This applies to the FAA as both domestic legislation governing U.S. arbitration agreements under Chapter 1 of the statute as well as Chapter 2 of the statute, which implements the New York Convention and " is intended to secure for United States citizens predictable enforcement by foreign governments of certain arbitral contracts and awards made in this and other signatory nations." Id. (quoting Suter v. Munich Reins. Co., 223 F.3d 150, 154 (3d Cir. 2000)) (internal quotation marks omitted).

Arbitration Act]." Id. This phrase does not represent magic words, but demonstrates the ease by which parties may indicate their choice to apply state enforcement mechanisms as opposed to those found within the FAA. Id. (noting that including such language in an agreement "s not particularly difficult" and imposes only "minuscule transaction costs").

Here, SII has not pointed to any language in the parties' Agreement evincing a clear intent to designate that the NJ Arbitration Act's enforcement mechanisms apply. Indeed, SII has not even acknowledged that "clear intent" need be shown. Moreover, my review of the Agreement does not reveal any mention of the NJ Arbitration Act. The Agreement does not reference New Jersey law at all. Accordingly, under Ario, I find no basis for concluding that the parties intended for the NJ Arbitration Act to govern their dispute and apply the FAA's enforcement mechanism and vacatur standards instead.[7] With the FAA's standards in mind, I turn to the parties' motions.

### B. Cross-Motion to Vacate

Because Verve's motion to confirm the arbitral award rises and falls on whether the award should be vacated, I turn first to SII's cross-motion to vacate. Verve brings two challenges to SII's cross-motion to vacate. First, Verve argues that SII's cross-motion to vacate is untimely. Second, Verve argues that SII has failed to demonstrate that any of the FAA vacatur standards apply.

#### 1. Timeliness

---

[7] In light of my holding, I do not address SII's cross-motion arguments based on the NJ Arbitration Act.

In responding to SII's cross-motion, Verve first argues that SII's attempt to vacate is untimely.  As Verve correctly notes, section 12 of the FAA provides that a motion to vacate be filed within three months of the filing of the award.  Oberwager v. McKechnie Ltd., 351 Fed.Appx. 708, 709-10 (3d Cir. 2009); 9 U.S.C. § 12.  Verve argues that SII did not file within this three-month window because, although the arbitral award was filed on January 11, 2011, SII did not file its cross-motion in this Court until May 2, 2011.

Although SII's cross-motion before this Court was not filed within the FAA's three-month limitations period, SII previously filed similar cross-motion papers in seeking leave to file such a motion in state court on March 2, 2011.  That date is well within the three-month window.  In Oberwager, the Third Circuit affirmed a district court's decision to construe a party's amended complaint as a motion to vacate the underlying arbitration award in that case.  351 Fed.Appx. at 709 n.2.  According to the court, construing the amended complaint in that fashion was an appropriation exercise of the district court's discretion.  Likewise, here, I exercise my discretion to treat SII's motion for leave to file a cross-motion to vacate in state court as a motion to vacate under the FAA.  Accordingly, I conclude that SII's motion to vacate is timely.

### 2.    FAA Vacatur Grounds

As noted, the vacatur grounds delineated in the FAA are: (1) where the award was procured through corruption/fraud; (2) evident partiality on the part of the arbitrator; (3) arbitrator misconduct; and (4) where the arbitrator exceeded his or her

powers or acted arbitrarily.  SII posits the following two reasons why I should vacate the arbitrator's decision:

1. [SII] advanced "sufficient cause" for its request for a postponement.

2. By denying [SII] the right to a subpoena to depose a non-party and submit a transcript of the deposition, the arbitrator engaged in misconduct and denied [SII] a right to a fair trial.  The arbitrator took away [SII's] opportunity to present its case.

Def. Opp. Br. at 18-19.  In SII's view, these two reasons compel the conclusion that the arbitrator's award was arbitrary and capricious.  See id.  A challenge to an arbitrator's decision as arbitrary and capricious falls under the final vacatur ground, the "irrationality" provision, which is also referred to as the "exceeded their powers" provision.  See Ario, 618 F.3d at 295 ("The 'irrationality' standard comes from the fourth ground, the "exceeded their powers" provision.").  Alternatively, SII's challenge may be viewed as a "third ground" challenge based on the arbitrator's "refus[al] to postpone the hearing, upon sufficient cause shown, or [refusal] to hear evidence pertinent and material to the controversy ...."  9 U.S.C. § 10(a)(3).

While SII has not pointed to, or discussed, any "irrationality" case law in its briefing, the Ario decision sets forth the applicable law.  According to Ario, courts reviewing an arbitrator's decision for irrationality are to "determine if the form of the arbitrators' award can be rationally derived either from the agreement between the parties or from the parties['] submissions to the arbitrators ...."  Id.  Courts are "not to revise the terms of the award unless they are completely irrational."  Id. (internal quotation marks omitted).  The court's review is an "undemanding one;" a court may

not overturn an arbitrator's decision simply because the court disagrees with that decision. Id. Only where the arbitrator's decision was "irrational and could not be supported on any theory of relief" should the decision be overruled. Id.

I do not find that the two reasons asserted by SII demonstrate that the arbitrator's decision was completely irrational. While SII contends that it showed sufficient cause for the postponement, the arbitrator was well within his discretion to conclude that SII failed to provide detailed facts in support of its request for additional time. The arbitrator reasoned that SII did not provide detail about what type of information SII sought access to, that SII did not explain what precise attempts it made during the discovery period to obtain access to the Devix servers and, most notably, why SII could not have informed the arbitrator prior to the December 13, 2010 deadline.

As noted supra, the AAA Rules provide that "the tribunal may conduct the arbitration in whatever manner it considers appropriate, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case." AAA Rules at Art. 16(1). The authority conferred by this rule to "conduct the arbitration in whatever manner it considers appropriate" is sufficiently broad to encompass the arbitrator's decision not to further extend the discovery period and prolong resolution of the dispute. In addition, both scheduling orders made pellucidly clear that the parties were to alert the arbitrator of discovery difficulties "immediately . . . so as not to delay the proceeding." SII did not comply with this directive. Moreover, while SII makes much of its belief that it could not subpoena

Devis for access to the servers, that SII did not even alert the arbitrator of its difficulties until the final hour calls into question the veracity of SII's contention. Accordingly, I conclude that the arbitrator's decision was not completely irrational

SII's further argument that the arbitrator's decision denied it of its right to a fair trial and took away its opportunity to present its case—which I construe as a third ground challenge under section 10(a)(3) of the FAA—is also without merit. The Third Circuit has made clear that "[s]ection 10(a)(3) cannot be read . . . to intend that every failure to receive relevant evidence constitutes misconduct which will require the vacation of an arbitrator's award." Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 557 (3d Cir. 2009). To the contrary, "vacatur pursuant to section 10(a)(3) is warranted only where the arbitrator's refusal to hear proffered testimony so affects the rights of a party that it may be said that he was deprived of a fair hearing." Id. (internal quotation marks omitted). In light of an arbitrator's "wide latitude in how [he] conduct[s] proceedings," according to the Third Circuit, courts apply an extremely deferential standard that rarely results in the vacation of an arbitral award. Id. (quoting Office & Prof'l Employees Int'l Union, Local No. 471 v. Brownsville Gen. Hosp., 186 F.3d 326, 334 (3d Cir. 1999)).

Any prejudice that SII suffered is of its own making, and is not due to any misconduct on the arbitrator's part. The arbitration spanned eight months, from April 2010 through December 2010. SII had plenty opportunity during that time frame to marshal evidence in support of its claim that Verve provided deficient services and overbilled SII. As the arbitrator noted in his decision, SII could have presented

15

affidavits from its own employees to buttress that claim. The certification and affidavit SII produced in this Court—after the arbitrator's decision was issued— was based on the employees' personal knowledge, and nowhere in those documents does SII incorporate or discuss Devix server information. This clearly illustrates that SII had the capacity to produce that same evidence to the arbitrator <u>before</u> he rendered his decision. For these reasons, I conclude that the arbitrator's denial of SII's request for additional time to complete discovery did not amount to arbitrator misconduct. Cf. <u>Three S Delaware, Inc. v. DataQuick Information Systems, Inc.</u>, 492 F.3d 520 (4th Cir. 2007) (affirming confirmation of arbitrator's denial of motion to reopen where the arbitrator "gave [the party] ample opportunities to present its evidence ...."); <u>Perhach v. Option One Mortg. Corp.</u>, 382 Fed.Appx. 897 (11th Cir. 2010) (holding that arbitrator's refusal to hear evidence did not amount to misconduct where "[e]ven though [the party] had the opportunity to submit evidence, he chose not to present witnesses ...."). Accordingly, I deny SII's cross-motion to vacate the arbitral decision.[8]

### C.   Motion to Confirm

With respect to Verve's motion to confirm the award, the FAA provides that "unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§

---

[8] SII also notes in its brief that demonstrating manifest disregard of the law, or a violation of public policy, are separate means for challenging an arbitrator's decision. However, SII makes no argument in this regard. Accordingly, the Court does not analyze whether the decision was in manifest disregard of the law or against public policy. Indeed, courts in the Third Circuit question whether, following the Supreme Court's decision in <u>Hall Street Assoc. v. Mattel, Inc.</u>, 552 U.S. 576 (2008), such extra-FAA mechanisms are still viable. See e.g., <u>Oberwager</u>, 351 Fed.Appx. at 710 n.4; <u>Kulchinsky</u>, 2011 WL 2745967 at *6 n.8.

10–11], the Court must grant a motion to confirm the award. 9 U.S.C. § 9." Kulchinsky v. Ameriprise Financial, No. 11-319, 2011 WL 2745967 (E.D.Pa. Jul.14, 2011). Therefore, because I find no basis upon which to vacate, modify or correct the award, I hereby grant Verve's motion to confirm it.  See Ario, supra at 296 (affirming confirmation of award where FAA vacatur standards not met).

## III.  CONCLUSION

For the foregoing reasons,  SII's cross-motion to vacate is DENIED and Verve's motion to confirm the arbitral award is GRANTED.


DATED: November 9, 2011

/s/ Freda Wolfson
United States District Judge